UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

A/JEAN WOOLFORD, AL-LYN WOOLFORD,
WILLIAM PHOENIX, ELIZABETH MORAN as the
natural guardian of BRANDON MORAN, and
KATHY LLOYD as the natural guardian of ANDRE
LLOYD,

Plaintiffs,

v.　　　　　　　　　407CV011

RESTAURANT CONCEPTS, II, LLC d/b/a,
APPLEBEE'S NEIGHBORHOOD BAR AND GRILL,

Defendant.

# ORDER

## I. INTRODUCTION

Five African-Americans brought this public-accommodations-based, race discrimination case against defendant Restaurant Concepts II, LLC ("Restaurant Concepts"). Their claims arise out of a Restaurant Concepts-owned, Applebee's Restaurant's refusal to serve them. Doc. # 1 at 5-6. Plaintiffs claim that the inhospitable treatment was illegally based on their race. *Id.* at 5. Denying liability, Restaurant Concepts moves this Court for F.R.Civ.P. 56 summary judgment.

## II. BACKGROUND

Plaintiffs are five blacks who were students at a local Savannah high school on 12/18/04. Doc. # 1 at 5. Plaintiff A/Jean Woolford ("A/Jean") is a female who was 18 at the time. Doc. # 20 at 29. Plaintiff Al-Lyn Woolford ("Al-Lyn"), A/Jean's younger brother, was 16. Doc. # 22 at 34. William Phoenix ("Phoenix"), also a plaintiff, was 17. Doc. # 23 at 33. And plaintiffs Brandon Moran ("Moran") and Andre Lloyd ("Lloyd") were 15 and 14, respectively. Doc. # 24 at 28; doc. # 25 at 28.

On 12/18/04, the plaintiffs traveled separately to the aforementioned Applebee's Restaurant. Doc. # 1 at 6. A/Jean drove Al-Lyn, Lloyd, Moran and another black student, Jarrett Rivers, to the restaurant. Doc. # 22 at 42. Upon their arrival, no hostess greeted them, so they seated themselves in the restaurant's bar area. Doc. # 21 at 53. Restaurant Concepts says that there was a sign requiring patrons to wait to be seated by the hostess, yet the plaintiffs ignored it. Doc. # 18 at 2. Plaintiffs say that none of them recall seeing such a sign. Doc. # 29 ¶ 1.

Shortly thereafter, plaintiff Phoenix arrived at the restaurant with another black student, Charles Futch, who was 14 or 15 years old at the time. Doc. # 21 at 50. According to Phoenix, they were seated by the hostess at a table near the other plaintiffs in the bar area. Doc. # 23 at 48.

Before any of the plaintiffs arrived, approximately ten white students were seated by the hostess in a different part of the restaurant. Doc. # 18 at 6. Some of the plaintiffs knew the white students because they attended the same high school. Doc. # 22 at 58.

While the plaintiffs were seated, a waitress brought them menus but no drink or food orders were taken. Doc. # 21 at 59-60. Phoenix actually did place a drink order, though, and received a Sprite. Doc. # 23 at 71.

Approximately twenty minutes after seating themselves, a server approached the restaurant manager, Jason Bivens, to complain about the plaintiffs' behavior in the bar area. Doc. # 16, exh. A ¶ 5. Bivens was told that the plaintiffs had seated themselves, they were being disruptive, and that other restaurant patrons had complained about their "loud and obnoxious manner." *Id.* After talking to the server in the kitchen, Bivens went to assess the situation and observed the plaintiffs acting "in a very loud and

disruptive manner." *Id.* ¶ 6. He saw that no parent or guardian accompanied the plaintiffs. *Id.*

Restaurant Concepts has two policies relevant to this situation. First, it "reserv[es] the right to refuse service to any loud or disruptive customers in its restaurants." *Id.* ¶ 7; *see also id.*, exh. C ¶ 5. Second, it "reserv[es] the right to refuse service to any customers under the age of 16 who are present without a parent or legal guardian." *Id.*, exh. A ¶ 9; *see also id.*, exh. C ¶ 5. Bivens, as the manager on duty, shouldered the responsibility of enforcing these policies. *Id.*, exh. A ¶¶ 7, 9.

It is undisputed that Bivens approached the plaintiffs' tables and informed them that they were being loud and disruptive. Doc. # 18 at 4. He also advised them of the restaurant's policy against loud or disruptive behavior. *Id.* And, he told them of the legal-guardian policy, then asked for proof of the plaintiffs' age. *Id.* at 5. Both Moran and Lloyd were under 16, while Al-Lyn, A/Jean, and Phoenix were over 16. *Id.* As previously stated, no parent or guardian was present. *Id.*

Because the plaintiffs were loud and obnoxious and some were under 16 without a legal guardian or parent present, Bivens asked them to leave the restaurant pursuant to its policies. *Id.* Plaintiffs complied. *Id.* at 6.

However, plaintiffs disbelieve that they were asked to leave pursuant to these policies; rather, they insist that such was done because of their race. For that matter, all but one of the plaintiffs claim they were not loud. Doc. # 21 at 65; doc. # 22 at 83; doc. # 23 at 80-81; doc. # 25 at 57.

Moran, on the other hand, admits that the group was loud during their visit, and that the manager told them to settle down if they wanted to stay in the restaurant. Doc. # 24 at 82-83.

But all of the plaintiffs insist that the group of white students in the restaurant were louder than they were. Doc. # 21 at 58; doc. # 22 at 61; doc. # 23 at 56; doc. # 24 at 52; doc. # 25 at 58. At the same time, though, it is undisputed that Bivens never received any complaints from customers or servers that the white students were loud or disruptive. Doc. # 18 at 6; *see also* doc. # 29 at 2 ¶¶ 23, 24 (plaintiffs admit no complaints were made against the white students).

Plaintiffs also insist that the age limit and legal guardian policy was stated differently by Bivens that night. Doc. # 29 at 2 ¶¶ 14, 15. A/Jean testifies that Bivens said "you can't be in Applebee's after a certain time without a guardian or you have to be 18 or older in order to be in here." Doc. # 21 at 63. Al-Lyn recalls him stating that "you have to be 18 to sit right here, to sit in this certain area" -- meaning the bar area -- or have a "supervisor." Doc. # 22 at 73, 75. Phoenix never mentions the manager's statements on age requirements, and Moran simply comments that the manager told them that they were underage. Doc. # 23; doc. # 24 at 81. Lloyd recounts the manager stating, "you had to be 18 or older or have a guardian present." Doc. # 25 at 54.

Plaintiffs additionally point out that the manager only enforced an age policy against the black students and not against the white students, who were the same age or younger than the plaintiffs, and who were also without a legal guardian. Doc. # 21 at 57, 66-67; doc. # 23 at 55; doc. # 24 at 51, 83. Restaurant Concepts replies, and plaintiffs dispute, that Bivens never knew the ages of the white students, nor whether they had a legal guardian

2

present. Doc. # 18 at 7. Bivens says he never had a reason to inquire of the white students' ages because he never observed them acting in a loud or disruptive manner, nor received any complaints about their behavior. Doc. # 16, exh. A ¶ 11. The plaintiffs claim that they told Bivens the white students were underage, too, but Bivens simply ignored them and only kicked them out. Doc. # 24 at 83.

Essentially, then, the plaintiffs say that the white students were underage and loud as well, yet were allowed to remain in the restaurant. Meanwhile, the plaintiffs *were* removed for the same alleged reasons (but plaintiffs still deny they were loud or disruptive). Thus, the plaintiffs claim that they were discriminated against based on their race, and the defendant's proffered explanations for its actions -- that the plaintiffs were loud and disruptive and underage without a legal guardian -- are mere pretext.

## III. ANALYSIS

Under Rule 56(c), "[t]he district court should only grant summary judgment ... where the record evidence, viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003); *see also* Fed.R.Civ.P. 56(c). "In ruling on a Rule 56 motion, the district court may not weigh the evidence or find facts. Instead, the court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party." *Morrison*, 323 F.3d at 924.

The plaintiffs bring two claims, one under 42 U.S.C. § 2000a *et seq.* and the other a 42 U.S.C. § 1981 claim.

### A. 42 U.S.C. § 2000a

42 U.S.C. § 2000a(a) provides that

> [a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation ... without discrimination or segregation on the ground of race, color, religion, or national origin.

42 U.S.C. § 2000a(a). The Applebee's restaurant in this case is certainly a place of public accommodation according to the law. 42 U.S.C. § 2000a(b)(2).

But under that statute, a plaintiff may only obtain injunctive relief, no damages. *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1007 (11th Cir. 1997). To claim injunctive relief, "a plaintiff must show a real or immediate threat that the plaintiff will be wronged again -- a likelihood of substantial and immediate irreparable injury." *Id.* (quotes and cites omitted).

Plaintiffs make absolutely no showing that they are subject to a real or immediate threat of future discrimination by Restaurant Concepts. No mention is made of such a threat in their brief (doc. # 30), and no facts in the record suggest a potential for future discrimination. For that matter, Phoenix has been back to the Applebee's three times since the events in question and has been served each time. Doc. # 23 at 36. Additionally, all of the plaintiffs admit that there were other black patrons in the restaurant that night who were served. Doc. # 21 at 55; doc. # 22 at 56-57; doc. # 23 at 51; doc. # 24 at 48; doc. # 25 at 45.

3

Because they fail to argue that a real or immediate threat of future harm exists, and there is no record evidence suggesting such, the plaintiffs have failed to establish standing to seek injunctive relief. *Jackson*, 130 F.3d at 1007. The defendant thus is entitled to summary judgment on plaintiffs' § 2000a *et seq.* claim.

**B. 42 U.S.C. § 1981**

Section 1981 prohibits racial discrimination in the making and enforcement of private contracts. *Brooks v. Collis Foods, Inc.*, 365 F.Supp.2d 1342, 1352 (N.D.Ga. 2005). It states that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts...." 42 U.S.C. § 1981(a). "Make and enforce contracts" is further defined as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981(b). That includes a contract formed by entering a restaurant and impliedly agreeing to pay for a meal and service.

For the plaintiffs to prevail under § 1981, they must prove that they are members of a racial minority and suffered intentional race discrimination that interfered in the making and performance of a contract. *Higginbotham v. E.H., Inc.*, 2005 WL 2709635, at *2 (S.D.Ga. 10/21/05) (unpublished); *Collis Foods, Inc.*, 365 F.Supp.2d at 1352; *Benton v. Cousins Props., Inc.*, 230 F.Supp.2d 1351, 1369 (N.D.Ga. 2002). They may prove intentional discrimination through (1) direct evidence; (2) pattern and practice evidence; or (3) circumstantial evidence of discrimination. *Collis Foods, Inc.*, 365 F.Supp.2d at 1352. Plaintiffs admit that they only have circumstantial evidence of discrimination in this particular case. Doc. # 30 at 8.

A circumstantial-evidence, § 1981 showing involves the burden-shifting framework derived from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Collis Foods, Inc.*, 365 F.Supp.2d at 1353. Hence, a plaintiff must first establish a *prima facie* case that creates an inference of discrimination. *McDonnell Douglas*, 411 U.S. at 802. After establishing a *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the defendant's actions. *Id.* If a legitimate, nondiscriminatory reason is given, the burden shifts back to the plaintiff to show that the defendant's proffered reason is mere pretext. *Id.* at 803.

Establishing a *prima facie* case in this context requires a plaintiff to prove: (1) that plaintiff is a member of a protected class; (2) that the allegedly discriminatory conduct concerned one or more of the activities enumerated in the statute; *i.e.*, the making, performance, modification, or termination of contracts, or the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship; and (3) that the defendant treated the plaintiff less favorably with regard to the allegedly discriminatory act than the defendant treated other similarly situated persons who were outside plaintiffs' protected class (this is known as the "comparator" element).[1] *Benton*, 230

---

[1] *Benton* largely adopted the Sixth Circuit's test found in *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862 (6th Cir. 2001). But *Christian* added another aspect to the third prong of the test -- a plaintiff can support an inference of discrimination by showing he "received services in a markedly hostile manner and in a manner which a reasonable person would find objectively unreasonable." 252 F.3d at 871. This obviated the need to produce a similarly situated (here, a white) comparator. (footnote cont'd on next page)

4

F.Supp.2d at 1370.

Plaintiffs, without question, satisfy the first two elements -- they are all black and were refused services at the Applebee's. The dispute here is over the third element. Plaintiffs claim that the white students at Applebee's that night were similarly situated comparators who received services and th§us were treated more favorably. Doc. # 30 at 9. According to the plaintiffs, the white students were loud and the same age as the plaintiffs (*i.e.*, underage) but they were allowed to remain and eat while the plaintiffs were removed. *Id.*

Restaurant Concepts argues that the two groups are in no way similarly situated. In establishing a similarly situated comparator, "their circumstances need not be identical, but there should be a reasonably close resemblance of facts and circumstances." *Solomon v. Waffle House, Inc.*, 365 F.Supp.2d 1312, 1325 (N.D.Ga. 2004) (quoting *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 101 (2d Cir. 2001)). "What is key is that they be similar in significant respects." *Id.*

While the plaintiffs and white students were around the same age and visited Applebee's simultaneously, Restaurant Concepts emphasizes differences between the two groups. The white students waited at the hostess stand to be seated, while the plaintiffs seated themselves. Doc. # 32 at 5. And manager Bivens observed the plaintiffs acting loud and disruptive; plus he had received complaints about their behavior. *Id.* On the other hand, it is undisputed that no complaints were received regarding the white students. *Id.* The defendant also points to the plaintiffs' admission that they were without a legal guardian. Nor, it says, have they proven that a guardian did not accompany the white students. Doc. # 17 at 12.

A couple of issues emerge with Restaurant Concepts' argument. First, the restaurant patrons' complaints regarding the plaintiffs were told to a server who then told the manager Bivens when he was in the kitchen. Doc. # 16, exh. A ¶ 5. But as the plaintiffs point out, doc. # 29 ¶ 9, this is hearsay within hearsay. Under F.R.Evid. 805, "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules."

Rather than make that showing, Restaurant Concepts simply states that the patrons' complaints were not hearsay. Doc. # 32 at 2. However, the complaints were statements made outside of a trial or hearing, and are offered for the truth of the matter asserted -- classic

---

The *Benton* court rejected this part of the test and instead used the one this Court just stated *supra*. *See also Jackson v. Waffle House, Inc.*, 413 F.Supp.2d 1338, 1360-61 (N.D.Ga. 2006) (applying *Benton* to a § 1981 claim); *Solomon v. Waffle House, Inc.*, 365 F.Supp.2d 1312, 1325 n. 4 (N.D.Ga. 2004) (same). However, other district courts in Georgia have adopted the entire *Christian* test. *See Collis Foods, Inc.*, 365 F.Supp.2d at 1354; *Higginbotham*, 2005 WL 2709635, at * 3.

Because the instant plaintiffs fail to argue that they received their services in a "markedly hostile manner and in a manner in which a reasonable person would find objectively unreasonable," the Court need not decide which test is appropriate (both tests are the same up to the "markedly hostile manner" part).

Similarly, the Court rejects the plaintiffs' offer to adopt a test from a Colorado district court case that does not require a similarly situated comparator. Doc. # 30 at 9 (citing *White v. Denny's, Inc.*, 918 F.Supp. 1418 (D.Colo. 1996). This case is clearly contrary to the great weight of authority cited *supra*. *See also Valez v. Levy World Ltd. P'ship*, 182 Fed.Appx. 929, 931 (11th Cir. 2006) (applying similarly situated comparator analysis to restaurant discrimination setting).

5

hearsay. F.R.Evid. 801(c). While the actual complaints could qualify for an exception as a present sense impression under Rule 803(1) -- "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter" -- the relay by the server to the manager does not fit within a hearsay exception. Accordingly, this evidence may not be considered for these purposes on a motion for summary judgment. *See Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999) ("[I]nadmissible hearsay cannot be considered on a motion for summary judgment").

Next, the fact that the plaintiffs seated themselves while a hostess seated the white students would normally be a material difference between the two groups. A restaurant has the right to socially manage its premises to promote its best interests, within the boundaries of the law. This means that, while a restaurant cannot seat people in certain sections based on race, it can strategically seat a group of younger patrons in a different part of the restaurant so as not to disturb other customers. But Restaurant Concepts fails to show that the area the plaintiffs sat in affected the night's events.

Restaurant Concepts' actual contention is that the plaintiffs were disrespectful when they ignored Applebee's sign requesting customers to wait and be seated by the hostess. Doc. # 16, exh. A ¶ 5. Meanwhile, the white students acted respectfully and waited for the hostess. Doc. # 18 at 6. But all of the plaintiffs contend that no hostess was there when they entered, and none of them saw any such sign, so they seated themselves. Doc. # 30 at 9. Plus, a waitress actually brought them menus after they sat down, so it could not have been that material. Doc. # 18 at 2. Under the circumstances as stated, this will not be considered a material, exonerating difference between the two groups.

As to the guardian issue, the plaintiffs stated that the white students were without a guardian according to their observations that night. Doc. # 21 at 69; doc. # 24 at 86. Restaurant Concepts has produced no evidence showing that the white students did have a guardian. Therefore, plaintiff's rather objective observations at this stage are sufficient to establish that neither group had a guardian present.

In the end, the groups are similarly situated according to the evidence in the record. It is also clear that the white students were allowed to remain and eat (doc. # 16, exh. B ¶ 9), while the plaintiffs were asked to leave. Plaintiffs have thus sufficiently established a *prima facie* case of race discrimination under § 1981.

The burden now shifts to the defendant to proffer a legitimate, nondiscriminatory reason for asking the plaintiffs to leave the restaurant. *McDonnell Douglas,* 411 U.S. at 802. This is merely a burden of production for the defendant. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). To satisfy that, "[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* (brackets original) (quoting *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981)).

Restaurant Concepts maintains that the plaintiffs were acting in a loud and obnoxious manner. Doc. # 17 at 16. The manager received complaints, so he went to observe the situation and confirmed the disruptiveness. Doc. # 16, exh. A ¶ 5. Upon approaching the tables and telling them that they were too loud, the

manager asked for their ages and discovered that no guardian was present for the younger members of their group. *Id.* ¶ 9. In order to "maintain[] a pleasant dining atmosphere" the manager asked the plaintiffs to leave the restaurant. Doc. # 17 at 16. This is a legitimate, nondiscriminatory reason supported by the evidence in the record.

The burden thus shifts back to the plaintiffs to show that Restaurant Concepts' proffered reasons are mere pretext. *McDonnell Douglas*, 411 U.S. at 803. "The district court must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct." *Combs*, 106 F.3d at 1538. Furthermore, "[a] reason is not pretext for discrimination 'unless it is shown both that the reason was false, and that discrimination was the real reason.'" *Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (1993)).

Plaintiffs argue that Restaurant Concepts' first reason -- that the plaintiffs were loud and disruptive -- is disputed by the plaintiffs' own testimony. A/Jean, Al-Lyn, Phoenix and Lloyd all stated that they were not loud. Doc. # 21 at 65; doc. # 22 at 83; doc. # 23 at 80-81; doc. # 25 at 57. Plaintiffs also testify that the white students were louder than them but were allowed to remain in the restaurant. Doc. # 21 at 58; doc. # 22 at 61; doc. # 23 at 56; doc. # 24 at 52; doc. # 25 at 58. But the only evidence that the plaintiffs produce in this regard is their subjective perceptions of the situation. This is simply insufficient to overcome Restaurant Concepts' proffered reason and supporting evidence, because the proper inquiry focuses on the manager's perception and motivation.

In an employment discrimination case, the "inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance." *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997). Thus when an employer produces evidence of "poor performance, an employee's assertions of his own good performance are insufficient to defeat summary judgment, in the absence of other evidence." *Id.* This makes perfect sense -- all terminated employees claiming discrimination subjectively perceive they were solid workers. But this will not suffice when the decisionmaker has produced evidence that they performed poorly.

Like any terminated employee, all disgruntled restaurant patrons removed for loud and disruptive conduct likely will be apt to say that they were not loud. Similarly, in this restaurant context, the focus should be on the manager's perception of the situation and the evidence produced to support that. Once the manager offers that perception and offers evidence to support it, the plaintiffs -- as is the case in the employment-discrimination context -- must then produce some evidence, other than their own subjective perceptions, to cast doubt on the manager's beliefs.

Applying this analytical construct to the current case, Bivens went to observe the plaintiffs' conduct after receiving complaints from a server made by other restaurant patrons. Doc. # 16, exh. A ¶ 5. While these complaints were considered hearsay in the "comparator" analysis *supra*, they are not hearsay in this context because they are not offered for the truth of the matter asserted. F.R.Evid. 801(c). Here the complaints are offered as evidence of

7

Bivens's motivation to observe the plaintiffs and ask them to leave the restaurant. *Lindsey v. Prive Corp.*, 161 F.3d 886, 895 (5th Cir. 1998) (manager's testimony regarding what other managers told him not hearsay when offered to explain manager's motive and state of mind for terminating plaintiff). "Testimony is not hearsay if it is offered only to show the context within which parties had been acting, or to show a party's motive or intent for behavior." 5 WEINSTEIN'S FEDERAL EVIDENCE § 801.11[5][B] (2d ed. 2007). In other words, it is of no importance whether the "loudness" complaints were true; what matters is that the manager *believed* that other restaurant patrons were bothered by the plaintiffs' conduct and thus went to assess the situation.

Upon observation, the manager found the plaintiffs behaving loudly and disruptively. Doc. # 16, exh. A ¶ 5. This is actually corroborated by *plaintiff* Moran, who admits that the group was loud in the restaurant. Doc. # 24 at 82. Too, all of the plaintiffs admit that Bivens told them that they were being too loud. Doc. # 21 at 70; doc. # 22 at 75; doc. # 23 at 77; doc. # 24 at 79; doc. # 25 at 52.

Furthermore, four members of the group of uninterested white students also state that the plaintiffs were very loud upon entering the restaurant, and continued to behave so where they were seated. Doc. # 16, exh. B ¶¶ 6,7; *id.*, exh. D ¶¶ 6, 7; *id.*, exh. E ¶¶ 6, 7; *id.*, exh. F ¶¶ 6, 7. In fact, it is undisputed that an Applebee's employee apologized to the white students for the plaintiffs' loud and disruptive behavior. *Id.*, exh. D ¶ 7; *id.*, exh. E ¶ 7; *id.*, exh. F ¶ 7.

The plaintiffs' only rebuttal is that they personally do not believe they were loud (except Moran of course who admitted it). Doc. # 30 at 9. This is insufficient to cast doubt on the defendant's proffered reason. Plaintiffs also say that the white students were louder. *Id.* Again, no other evidence is offered except plaintiffs' subjective perceptions, and it is undisputed that no complaints were made regarding the white students' behavior. Doc. # 18 at 6.

Plaintiffs have offered no other evidence besides their own subjective perceptions to cast doubt on Restaurant Concepts' legitimate, nondiscriminatory reason for asking the plaintiffs to leave -- that they were loud and disruptive. Furthermore, the fact that the plaintiffs admit there were other black patrons in the restaurant eating that night vitiates any attempt to show any racially discriminatory motivation by Restaurant Concepts. Doc. # 21 at 55; doc. # 22 at 56-57; doc. # 23 at 51; doc. # 24 at 48; doc. # 25 at 45. Again, "[a] reason is not pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *Brooks*, 446 F.3d at 1163 (quotes and cite omitted). Plaintiffs' evidence fails to show that Restaurant Concepts' reason is false and that discrimination was its real motivation.

The plaintiffs' last argument is that the application of Restaurant Concepts' age requirement and guardian policy is evidence of discrimination because it was only enforced against the plaintiffs and not the white students. "Evidence of disparate treatment under [a] policy is certainly relevant." *Collis Foods, Inc.*, 365 F.Supp.2d at 1358 n. 6. The evidence shows that the white students and the plaintiffs were approximately the same age, and that the white students lacked a guardian as well. Doc. # 21 at 69; doc. # 24 at 51, 86.

But it is apparent from the record that Bivens approached the plaintiffs because they were loud and disruptive, and he had received complaints

8

regarding their behavior. Doc. # 16, exh. A ¶¶ 5, 9. Upon encountering them, Bivens realized that some were young teenagers and that no guardian was present to control them. Whether the age requirement is 16 (as Restaurant Concepts contends) or 18 (as the plaintiffs claim they were told), the purpose behind the rule is to maintain a pleasant dining atmosphere for all patrons. It is a fact of life that young teenagers unaccompanied by a guardian may potentially disturb other customers, and no one suggests here that confronting and ejecting noisy, disruptive teenagers is not a legitimate managerial prerogative.

Restaurant Concepts' claim -- that this rule was only applied to the plaintiffs because they were loud and disruptive, and *not* because they are black -- has not been shown to be pretextual. Plaintiffs were perceived to be loud and disruptive, complaints were made, and no guardian was present. The first thing Bivens told them is that they were too loud. Doc. # 22 at 75; doc. # 23 at 77; doc. # 24 at 79; doc. # 25 at 52. He then asked them to leave, and the law imposes no requirement that he first provide them with a warning. It also is undisputed that no complaints were received regarding the white students, so there was no reason to ask them to leave.

Plaintiffs again have failed to produce evidence sufficient to question Restaurant Concepts' reasoning or its motivations. Based on these facts, no reasonable factfinder could find in their favor here, so the defendant is entitled to summary judgment.

IV. **CONCLUSION**

Accordingly, the Court *GRANTS* defendant Restaurant Concepts' motion for summary judgment. Doc. # 16. The plaintiffs' Complaint is *DISMISSED WITH PREJUDICE*.

This 23 day of January, 2008.

*/s/ B. Avant Edenfield*
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA